<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAYMOND BYERS, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK), *et al.*,<br><br>     Defendants. | Case No. 2:19-cv-01024 (BRM) (CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant New Jersey Transit Rail Operations, Inc.'s ("NJTRO") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Motion for Declaratory Judgment against co-Defendant Intersection Media, LLC ("Intersection"). (ECF No. 60.) Intersection filed an opposition to the motions. (ECF No. 62.) Having reviewed the parties' submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, NJTRO's motions are **DENIED**.

**I.     BACKGROUND**

This case arises out of a negligence claim filed by Plaintiffs Raymond Byers ("Mr. Byers") and Tiffany Byers (collectively, "Plaintiffs") against National Railroad Passenger Corporation ("Amtrak"), Intersection, and NJTRO. (Second Am. Compl. (ECF No. 19).) Mr. Byers, a train conductor employed by NJTRO, alleges a commercial advertising sign fell on him as he was traversing the platform of Tracks 9 and 10 at Pennsylvania Station in New York City in April 2018. (*Id*. ¶¶ 9–10, 22.) Mr. Byers alleges he suffered "multiple abrasions, contusions, and

lacerations of the head and face; contusion of the left eyeball and orbital tissues; injury to the cervical spine; cervical sprain and strain; cervical radiculitis; cervical facet syndrome; cervical spondylosis; and other injuries" as a result of this incident. (*Id*. ¶¶ 25, 44.) According to Mr. Byers, Amtrak owns and maintains Pennsylvania Station. (*Id*. ¶¶ 11–15.)

Pursuant to a Northeast Corridor Services Agreement, Amtrak permits NJTRO to use Pennsylvania Station for NJTRO's rail operations. (NJTRO Mot., Ex. B (ECF No. 60-4).) Additionally, Amtrak has an Indoor Advertising License Agreement ("Licensing Agreement") with Intersection (Intersection Opp., Ex. A (ECF No. 62-1)), pursuant to which Amtrak permits Intersection to install and maintain various types of advertising, including overhead advertising signs in Pennsylvania Station (*Id.*; ECF No. 19 ¶¶ 18, 21.) The Licensing Agreement contains an indemnification provision, providing in relevant part:

> Licensee[1] shall indemnify, protect, defend, and save harmless the Amtrak Parties irrespective of any negligence, fault or strict liability on their part, from and against all losses, damages, liabilities, penalties, judgments, fines, forfeitures, demands, claims, causes of action, suits at law or in equity, costs and expenses (including, without limitation, cost of defense and attorneys' fees) . . . which any or all of them hereafter may incur, suffer, sustain, be subject to, incur or pay by reason of or on account of, directly or indirectly,
>
> (i) the construction, placement, installation, attachment, presence, use, maintenance, repair, alteration, improvement, renewal, destruction, relocation or removal of, or damage to, Indoor Advertising Displays or the copy thereon;[2]

---

[1] According to the Licensing Agreement, the Licensee is Titan Outdoor, LLC, the predecessor of Intersection. (ECF No. 62-1; ECF No. 62 at 7 of 28.) There is no dispute Intersection is the successor to Titan Outdoor, LLC, and Intersection "took over" the Licensing Agreement at issue. (ECF No. 62 at 7 of 28; ECF No. 60 at 4 of 8.)

[2] The Licensing Agreement defines "Indoor Advertising Displays" as "[a]dvertising displays that are situated (a) in Amtrak's railroad passenger stations, or on other real property owned or controlled by Amtrak and (b) so as to be directed primarily at rail passengers." (ECF No. 62-1 at 6 of 57.)

2

> (ii) the acts, errors or omissions of Licensee, its officers, members, principals, directors, employees, agents, representatives, contractors or subcontractors, relating, indirectly or directly, to this Agreement;
>
> (iii) the violation of any provision of this Agreement by Licensee, its officers, members, directors, employees, agents, representatives, contractors or subcontractors;
>
> (iv) any actual or alleged infringement of any patent, trademark, service mark, copyright or similar property right, or arising from any alleged or actual unfair competition or other similar claim or any actual or alleged libel or slander, arising out of the operations of Licensee connected with this Agreement;
>
> (v) the breach of any representation or warranty made by Licensee under Section 41; or
>
> (vi) Amtrak's exercise of its rights under this Agreement, including, but not limited to, the disapproval or approval of any advertising material, advertisers, advertising or manner of presentation of material.

(ECF No. 62-1 at 22 of 57.) The Licensing Agreement defines "Amtrak Parties" as "Amtrak, its affiliates and subsidiaries (including, without limitation, WTC), TSL, SEPTA, and their respective principals, members, officers, directors, employees and agents." (*Id.* at 5 of 57.) Moreover, the Licensing Agreement includes a provision excluding certain third parties, stating "This Agreement shall not create for, nor give to, any third party any claim or right of action against either party that would not arise in the absence of this Agreement." (*Id.* at 34 of 57.)

The Licensing Agreement also contains a choice of law provision, providing in relevant part:

> This Agreement, the rights and obligations of the parties and any claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the District of Columbia without giving effect to choice of law or conflicts of laws principles thereof and regardless of the place of execution or performance of this Agreement or any part thereof.

(*Id.* at 32 of 57.)

3

On July 19, 2019, Plaintiffs filed their Second Amended Complaint, alleging negligence on the part of Amtrak, Intersection, and NJTRO for failing to properly inspect and maintain the overhead sign that fell on Mr. Byers and caused him injury. (ECF No. 19 ¶¶ 22–23; 42–43.) On August 10, 2021, NJTRO moved for summary judgment against Intersection, seeking a judgment declaring NJTRO is entitled to full benefit of the indemnification provision in the Licensing Agreement and ordering Intersection to defend, indemnify, and hold harmless NJTRO in this litigation for Plaintiffs' claimed injuries. (ECF No. 60.) On August 31, 2021, Intersection filed an opposition. (ECF No. 62.)

## II.     LEGAL STANDARD

### A.     Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id*. at 331 (citing 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983)). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either: (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*. (citations omitted). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quotation marks omitted). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[.]" *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial[.]" *Id*. at 323.

5

**B.      Declaratory Judgment**

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The express language of the declaratory judgment statute and fundamental principles of standing under Article III of the Constitution limit this power to actions that present a "case or controversy." *Cutaiar v. Marshall*, 590 F.2d 523, 527 (3d Cir. 1979). The "actual controversy" requirement refers to the case or controversy requirement of Article III. *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1336 (3d Cir. 2007). In *Teva Pharmaceuticals*, the Third Circuit stated that standing in the declaratory judgment context requires

> that the dispute be "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

*Id*. (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). The court noted, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (citation omitted).

"The statute creates a remedy only; it does not create a basis of jurisdiction, and does not authorize the rendering of advisory opinions." *Cutaiar*, 590 F.2d at 527. Moreover, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (citation and internal quotations omitted).

6

### III. DECISION

NJTRO asserts Intersection is obligated to defend, indemnify, and hold NJTRO harmless in this litigation pursuant to the terms of the Licensing Agreement between Amtrak and Intersection. (ECF No. 60 at 4–6.) Specifically, NJTRO argues it is an intended third-party beneficiary of the Licensing Agreement. (*Id.* at 4.) Intersection counters NJTRO is not an intended third-party beneficiary of the Licensing Agreement, and therefore, NJTRO does not have a right of indemnification. (ECF No. 62 at 11–16.) Intersection asserts, at the very least, there are genuine issues of material fact as to whether NJTRO is an intended third-party beneficiary under the terms of the Licensing Agreement. (*Id.* at 17–20.)

Intersection also argues the governing law of this matter should be either New Jersey law or New York law, not the law of the District of Columbia. (*Id*. at 6–8.) Therefore, the Court will address the choice of law before considering NJTRO's claim for indemnification.[3]

#### A. Choice of Law

The Licensing Agreement between Amtrak and Intersection includes a choice of law provision which provides the laws of the District of Columbia govern the agreement. (ECF No. 62-2 at 32 of 57.) Intersection asserts New Jersey and New York have an interest superior to the District of Columbia's interest in this litigation, and each jurisdiction applies different contract

---

[3] Intersection further argues NJTRO's summary judgment motion should be dismissed for failure to conform with court rules. (ECF No. 62 at 5.) Specifically, Intersection argues NJTRO's summary judgment papers are deficient because NJTRO failed to accompany its motion with a statement of undisputed material facts as required by Local Civil Rule 56.1. (*Id.*) Despite this procedural deficiency, the Court will accept NJTRO's motion for summary judgment and adjudicate the matter on the merits.

interpretation standards regarding third-party beneficiaries.[4] (ECF No. 62 at 7.) Intersection argues because NJTRO conducts business in New Jersey and Intersection maintains its principal place of business in New York, there is a conflict of law, and therefore, either New Jersey law or New York law—rather than District of Columbia law as prescribed by the Licensing Agreement—should govern. (*Id.* at 6, 9–10.)

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). In cases in which their jurisdiction depends upon diversity of citizenship, "federal courts must follow conflict of laws rules prevailing in the states in which they sit." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941). "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state[.]" *Homa v. Am. Express Co.*, 558 F.3d 225, 227 (3d Cir. 2009).

To apply a contract's choice of law provision, a court need not first ascertain the validity of the contract as a whole. *Hite v. Lush Internet Inc.*, 244 F. Supp. 3d 444, 450 n.3 (D.N.J. 2017). A contractual choice of law can be enforced even though the contract would be invalid for lack of consideration in the state whose law would otherwise apply. Restatement (Second) of Conflicts of Laws § 187(2)(b) cmt. e, illus. 8 (1969). "The Court will enforce the terms of a contract that is unambiguous on its face." *Brauser Real Estate, LLC v. Meecorp Cap. Mkts., LLC*, Civ. A. No. 06-01816, 2008 U.S. Dist. LEXIS 8000, at *9 (D.N.J. Feb. 4, 2008) (citing *Statewide Realty Co. v. Fidelty Mgmt. & Research Co., Inc.*, 611 A.2d 158 (N.J. Super. Ct. Law Div. 1992)). "[C]ourts in [the Third Circuit] have repeatedly honored choice-of-law provisions that explicitly state a

---

[4] NJTRO does not respond to Intersection's arguments or advance its own arguments regarding the governing law. Notwithstanding, NJTRO's arguments in support of its request for judgment on indemnification relies entirely on District of Columbia law.

8

particular governing law without regard to conflicts of law." *Id*. (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159 (3d Cir. 1999)).

In New Jersey, a choice of law clause will be upheld

> unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issues and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124 (N.J. 1992) (citing Restatement (Second) of Conflicts of Laws § 187 (1969)).

Here, the case is based on diversity jurisdiction, and the forum state in which the Court sits is New Jersey. (ECF No. 19 at ¶ 6.) Therefore, the Court applies federal procedural rules and New Jersey choice of law rules in deciding whether the Licensing Agreement's choice of law provision is enforceable. The Licensing Agreement's choice of law provision explicitly states "[t]his Agreement . . . shall be governed by and construed in accordance with the laws of the District of Columbia without giving effect to choice of law or conflict laws principle thereof." (ECF No. 62-1 at 32 of 57.) As evident by its plain language, the contracting parties' clear and unambiguous intention is to apply District of Columbia law to the Licensing Agreements. *See Brauser Real Estate*, 2008 U.S. Dist. LEXIS 8000, at *9 ("[C]ourts in this jurisdiction have repeatedly honored choice-of-law provisions that explicitly state a particular governing law without regard to conflicts of law." (citing *Allegheny Energy*, 171 F.3d at 159)). Moreover, one of the contracting parties, Amtrak, is a citizen of the District of Columbia, and therefore, the chosen state has a relationship and basis for the contracting parties' choice. Intersection does not advance, nor does the Court

9

discern, any basis to disregard the Licensing Agreement's choice of law provision. Accordingly, the Court finds the District of Columbia law governs the Licensing Agreement.

**B.      Third-Party Beneficiary**

NJTRO asserts it is an intended third-party beneficiary of the Licensing Agreement. (ECF No. 60 at 4.) Specifically, NJTRO argues "the broad scope of the indemnification clause of the [Licensing Agreement] would be meaningless unless it were interpreted as manifesting an intention to benefit and apply to NJTRO[.]" (ECF No. 60 at 5.) NJTRO also contends the terms of the Licensing Agreement are unambiguous as to its right to indemnify NJTRO. (*Id.*) Intersection counters NJTRO is not entitled to indemnification. (ECF No. 62 at 23.) Specifically, Intersection argues "NJTRO failed to present any evidence in support of its contention that Intersection and Amtrak intended to make NJTRO a third-party beneficiary of their licensing agreement's indemnification clause." (ECF No. 62 at 19.)

Under District of Columbia law, a nonparty may sue for breach of contract where the nonparty is an intended third-party beneficiary of the contract. *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008). "Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such status." *Silberberg v. Becker*, 191 A.3d 324, 332 (D.C. 2018) (quoting *Fort Lincoln*, 944 A.2d at 1064). Specifically, the contracting parties must have "intended to create and did create enforceable contract rights in the third party." *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 109 (D.D.C. 2015) (quoting *Sealift Bulkers, Inc. v. Republic of Arm.*, Civ. A. No. 95-1293, 1996 U.S. Dist. LEXIS 23158, at *10 (D.D.C. Nov. 22, 1996)); *see also* Restatement (Second) Contracts § 302(1) (Am. L. Inst. 1981). In determining whether a third-party is an intended beneficiary, courts consider whether the circumstances under which a contract

was executed indicate the contract was meant to benefit the third-party. *See A.S. Johnson v. Atl. Masonry Co.*, 693 A.2d 1117, 1122 (D.C. 1997); *Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 33 (D.D.C. 2019); *see also Needham v. Hamilton*, 459 A.2d 1060, 1061–63 (D.D.C. 1983). "Nevertheless, the contracting parties' 'mere knowledge or awareness that a contract may benefit a third-party' will not do; they must 'directly and unequivocally intend to benefit' the third party." *Colella v. Androus*, 518 F. Supp. 3d 439, 445 (D.D.C. 2021) (citing *Bowhead Info. Tech. Servs., LLC v. Catapult Tech. Ltd.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (quoting *Barnstead Broad. Corp. v. Offshore*, 886 F. Supp. 874, 879 (D.D.C. 1995)).

Here, there are genuine issues of material fact regarding whether the indemnification provisions in the Licensing Agreement extend to NJTRO as a third-party beneficiary. The language of the indemnification clause provides Intersection "shall indemnify, protect, defend, and save harmless the Amtrak Parties irrespective of any negligence." (ECF No. 62-1 at 22 of 57.) The Licensing Agreement defines "Amtrak parties," in pertinent part, as "Amtrak, its affiliates and subsidiaries (including, without limitation, WTC), TSL, SEPTA, and their respective principals." (*Id*. at 5 of 57.) The Licensing Agreement also includes certain third-party exclusionary language, which provides the Licensing Agreement "shall not create for, nor give to, any third party any claim or right of action against either party that would not arise in the absence of this Agreement." (*Id*. at 34 at 57.) NJTRO is not mentioned in the Licensing Agreement. Other than asserting NJTRO's permitted use of Pennsylvania Station entitles NJTRO to the Licensing Agreement's indemnification benefits, NJTRO does not advance any evidence to establish Amtrak and Intersection had an express or implied intention to make NJTRO a third-party beneficiary. *See Fort Lincoln Civic Ass'n*, 944 A.2d at 1064 ("Third-party beneficiary status requires that the contracting parties had an express or implied intention to benefit directly the party claiming such

11

status."). Therefore, NJTRO has not established its burden that there are no genuine issues of material fact as to whether NJTRO is an intended beneficiary of the Licensing Agreement.[5] *See Celotex,* 477 U.S. at 322–23. Accordingly, NJTRO's motion for summary judgment and declaratory judgment is **DENIED.**

IV. **CONCLUSION**

For the reasons set forth above, NJTRO's Motion for Summary Judgment and Declaratory Judgment is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: January 31, 2022

---

[5] In a nearly identical matter before the Honorable Esther Salas, U.S.D.J., the court reached the same conclusion on both the choice of law and third-party beneficiary issues. *See Byers v. N.J. Transit Rail Operations, Inc.*, Civ. A. No. 17-5383 (ES) (JSA) (D.N.J. Jan. 6, 2022). In that case, NJTRO sought a declaratory judgment and summary judgment against 365 Maintenance LLC, a snow removal company that contracts with Amtrak, arguing it was an intended third-party beneficiary entitled to the indemnification benefits of an agreement between Amtrak and 365 Maintenance LLC (the "Amtrak-365 Agreement"). (*See* Civ. A. No. 17-5383 at ECF No. 108-3.) The court first considered whether New Jersey or the District of Columbia law govern the Amtrak-365 Agreement, holding the plain language of the Amtrak-365 Agreement contains an enforceable choice of law provision that provides the District of Columbia law governs. (*Id.* at ECF No. 127.) The court then addressed whether NJTRO was an intended third-party beneficiary of the Amtrak-365 Agreement under District of Columbia law. (*Id.*) After hearing oral argument, the court ruled on the record, denying NJTRO's declaratory judgment and summary judgment motions, finding there are genuine issues of matter fact for a jury to decide in determining whether NJTRO is an intended third-party beneficiary of an agreement with a similar indemnification clause that did not mention NJTRO. (*Id.*) The Court finds the Honorable Esther Salas, U.S.D.J.'s reasoning and conclusion persuasive and applicable to the current matter.